**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

Dated: June 22, 2007

_____
**ROBERT C. MCGUIRE
UNITED STATES BANKRUPTCY JUDGE**

_____

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| JOHN F. TALBERT AND | § | CASE NO. 06-60753-LEK |
| MISTI L. TALBERT, | § | |
|     Debtors. | § | Chapter 7 |
| | § | |
| HUNTSVILLE WHOLESALE | § | |
| GROCERS, INC., | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | ADVERSARY NO. 06-6044 |
| | § | |
| JOHN TALBERT AND | § | |
| MISTI TALBERT, | § | |
|     Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

    On June 5, 2007, the Court held a trial on the complaint filed by Huntsville Wholesale Grocers, Inc. ("Plaintiff") against John Talbert and Misti Talbert ("Defendants") to declare a debt owed to Plaintiff by Defendants non-dischargeable pursuant to 11 U.S.C. § 523(c) and to deny

1

the Defendants a discharge pursuant to 11 U.S.C. § 727.

The Court has subject matter jurisdiction of the parties' dispute pursuant to 28 U.S.C. § 1334 and § 157. The matter is a core contested proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) (determinations as to the dischargeability of debts) and § 157(b)(2)(J) (objections to discharges). At the beginning of trial, based upon a motion by Defendants, which was not opposed by Plaintiff, the Court dismissed Plaintiff's cause of action to deny Defendants a discharge brought under 11 U.S.C. § 727.

At trial, Plaintiff's agent James Wade testified. Also, at trial, Defendant Misti Talbert testified. Plaintiff's Exhibits 1 -20 and Defendants' Exhibit 1, pages 3-4, were admitted into evidence.[1]

Plaintiff contends it contracted with Defendants to provide Defendants goods, primarily tobacco products and related items. Pursuant to that agreement, from September 2005 through October 2005, Plaintiff provided such items to Defendants, but the approximate amount of $76,872.92 remains unpaid.[2] Plaintiff contends it entered into the contractual relationship with Defendants and provided the items based upon Defendants' promises to pay for said items, with such promises shown by checks written by Defendants to pay for the delivered goods. Plaintiff contends that Defendants knew the promises to pay were false when made, that all was done with the intent of deceiving and defrauding Plaintiff and/or was made with the intent to induce Plaintiff to continue to deliver goods to Defendants. Plaintiff contends that grounds exist to declare the unpaid debt non-dischargeable.

Defendants contend that they never induced Plaintiff to sell them goods on credit through fraud or fraudulent misrepresentations and never incurred debt for which they did not intend to pay. Defendants contend that, when checks were written to cover the payment for delivered goods, they intended to have money in the bank account sufficient to cover the checks. Defendants contend that they filed a chapter 7 bankruptcy only as a last resort because the tobacco store business failed. Defendants do not dispute that they are personally liable for the debt owed Plaintiff. Defendants do

---

[1] Plaintiff's Exhibits 1 through 20 were admitted into evidence without objection from Defendants. However, Defendant Misti Talbert testified she could not identify Plaintiff's Exhibits 5, 6, 8, 10, and 12.

[2] The $76,872.92 figure was plead in Plaintiff's complaint and repeated in Plaintiff's Pretrial Order as the amount owed by Defendants. However, at trial, on questioning by Plaintiff's attorney, Defendant Misti Talbert agreed that $84,167 is owed. Plaintiff is limited to the amount plead.

not dispute the amount of the debt Plaintiff claims is owed.

The foregoing and following represents the Court's findings of fact and conclusions of law made pursuant to Bankruptcy Rules 7052 and 9014. Where appropriate, a finding of fact shall be construed to be a conclusion of law, and vice versa.

## **FINDINGS OF FACT**

1. Plaintiff is owed at least $76,872.92 by Defendants.
2. At all relevant times, Defendants jointly did business under the name of Tobacco Island, a store that sold tobacco goods and other related items in Gatesville, Texas.
3. Plaintiff and Defendants had a business relationship from about November 1999 through the end of October 2005 and into the first days of November 2005. During that six year period, Plaintiff did not deliver goods to Defendants for about an 8-month to one-year period because, during that short time, Plaintiff did not deliver to the geographical area that included Defendants' store location. During this 1999 through 2005 time period, Plaintiff supplied primarily tobacco products and other related items to Tobacco Island.
4. Jack and James Wade are officers of Plaintiff. James Wade testified he is vice-president of Plaintiff.
5. At all relevant times, Defendant Misti Talbert was the primary person with Tobacco Island handling the store's dealings with Plaintiff.
6. At all relevant times, Defendant Misti Talbert was the primary person handling the finances for Tobacco Island, including paying all bills and writing all checks.
7. Tobacco Island started having cash flow problems in approximately the summer of 2004.
8. About that same time in the summer of 2004, Defendants and Plaintiff agreed to allow Defendants to pay for goods on extended terms. Under this agreement, on Tuesdays, when Plaintiff made deliveries to Tobacco Island, Defendant gave checks to Plaintiff's delivery driver for goods delivered previously, usually goods that had been delivered to the store in the preceding week. These checks were, for the most part, post-dated to a future date on which Defendants expected to have money in the bank account sufficient to cover the check amounts.
9. Plaintiff did not have a lien on inventory delivered to Defendants' store. Although a lien arrangement was discussed, and Defendants were agreeable to granting a lien, Plaintiffs did not send

documents to Plaintiff to sign to grant a lien on inventory.

10. Defendants' weekly purchases of inventory from Plaintiff during September 2005 through October 2005 was of equal, if not smaller, amounts than Defendants had usually purchased from Plaintiff on a weekly basis during the preceding five years.

11. Defendant Misti Talbert testified that Plaintiff had not included in its exhibits two invoices dated approximately September 12, 2005 and September 17 or 19, 2005 for deliveries made in about that same month for a total amount of $32,000 and for which she was able to pay without checks being returned for insufficient funds.

12. Defendant Misti Talbert worked out a payment schedule with the Wades, agents of Plaintiff, on one Tobacco Island check dated September 30, 2005 in the amount of $20,0013.66 which had been returned for insufficient funds and for which she would pay $2000 per week until paid. She made four payments of $2000 each with checks dated October 4, 11, 20, and 27, 2005.

13. Defendant Misti Talbert called the Wades to inform them that she was stopping payment on October 27, 2005 on all checks they were holding that were post-dated to dates later than October 27, 2005.

14. James Wade testified that Plaintiff received, on average, in the year prior to Tobacco's Island's closing, about 2-3 insufficient checks from Defendants. He testified that he did not consider the receipt of insufficient funds checks from a customer to be an indication of that customer's financial health, given that checks did not clear "NSF" for a variety of reasons.

15. Defendants closed the store in early November, likely the first or second day of November.

16. Just prior to closing the store, Defendants sold approximately $16,000 of inventory at cost (which was apparently at wholesale value) to another tobacco store. By this sale, Defendants sold nearly all of the inventory of Tobacco Island.

17. After the sale of goods at cost, Defendant Misti Talbert called James Wade and informed him that she did not know for certain, but there was not likely enough inventory left for Plaintiff to pick up. James Wade apparently agreed with this information because Plaintiff did not send a representative to Tobacco Island to investigate the existence or dollar value of any remaining inventory.

18. Defendant Misti Talbert used the approximately $16,000 received from sale of tobacco at cost, along with some other small amount of money, to pay Plaintiff for another Tobacco Island

check dated October 21, 2005 in the amount of $17,537.77 that had been returned unpaid for insufficient funds.

19. Defendants decided to close Tobacco Island only afer receiving a notice from their bank on approximately October 26, 2005 of a check being denied payment for insufficient funds.

20. Defendant Misti Talbert credibly testified that at least 90% of Tobacco Island's income was paid to Plaintiff. The remaining income went to pay overhead expenses, including the salaries of two employees, a salary to Defendant Misti Talbert, rent, and utilities.

21. Plaintiff presented no evidence how much, if any, of personal bills that Defendants paid using store income.

22. Defendant Misti Talbert credibly testified that, when she gave post-dated checks to Plaintiff, she intended to have the funds in the Tobacco Island bank account to cover the amount of the check.

23. Defendant Misti Talbert credibly testified that all proceeds of the sales of inventory during September and October of 2005, except money paid on overhead expenses, went to Plaintiff to pay for money owed on previous invoices.

24. Defendant Misti Talbert did not challenge the fact that she did not pay for $84,167 of inventory delivered during September and October 2005.

## CONCLUSIONS OF LAW

Courts have determined that the party seeking an exception to discharge bears burden of proof as to nondischargeability of the debt. Fields v. Hartford Casualty Insurance Co., 926 F.2d 501 (5th Cir.), cert. denied, 502 U.S. 938 (1991). Here, Plaintiff bears the burden of proof to present evidence showing the debt Defendants owe it should survive bankrupcy. Also, the United States Supreme Court has stated that the plaintiff must prove the exception by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 287 (1991); RecoverEdge L.P. v. Pentecost, 44 F.3d 1284, 1292 (5th Cir. 1995). Thus, Plaintiff must present an amount of evidence showing that is it more probable than not that the factors of the claimed exception of § 523 are met, such that the debt owed it is excepted from Defendants' discharge.

Although Plaintiff cited 11 U.S.C. § 523(c) in its complaint as the Bankruptcy Code basis for its cause of action, this subsection only informs creditors that they must take action by bringing an adversary proceeding to have a debt held non-dischargeable if the debt is of a type falling within

5

the categories described in §§ 523(a)(2), (4), or (6). Plaintiff did not specify under which subsection of § 523 it was suing; however, Defendants did not complain. The allegations in the complaint set forth a cause of action under § 523(a)(2)(a).

Under 11 U.S.C. § 523(a)(2), a debt shall not be dischargeable in bankruptcy "to the extent" it is "for money ... obtained by ... false pretenses, a false representation, or actual fraud." Archer v. Warner, 538 U.S. 314, 316, 123 S. Ct. 1462, 1465 (2003). As the Fifth Circuit has explained:

> As a general matter, § 523(a)(2)(A) "contemplates frauds involving 'moral turpitude or intentional wrong; fraud implied in law which may exist without imputation of bad faith or immorality, is insufficient.'" . . . When defining the elements of nondischargeability under § 523(a)(2)(A), we have distinguished between actual fraud on the one hand, and false pretenses and representations on the other. In order for a debtor's representation to be a "false representation or false pretense" under § 523(a)(2), it "must have been: (1) [a] knowing and fraudulent falsehood [ ], (2) describing past or current facts, (3) that [was] relied upon by the other party."

RecoverEdge L.P. v. Pentecost, 44 F.3d at 1292-93; see also Bank of La. v. Bercier (In re Bercier), 934 F.2d 689, 692 (5th Cir.1991) ("[T]o be a false representation or false pretense under § 523(a)(2), the 'false representations and false pretenses [must] encompass statements that falsely purport to depict current or past facts.'"(citation omitted)).

The words "false pretenses, a false representation, or actual fraud" in § 523(a)(2)(A) refer to common-law torts, while the words in § 523(a)(2)(B) related a cause of action based upon false statements in writing do not. Field v. Mans, 516 U.S. 59, 69, 116 S. Ct. 437, 443 (1995). A plaintiff suing under § 523(a)(2)(A) need not show reasonable reliance on the false statements, but must show justifiable reliance thereon, such that the reliance must be justified given the particular circumstances. Id. at 74-75, 116 S. Ct. at 446.

Here, based upon the credible testimony of the witnesses for both Plaintiff and Defendant, the following was proved: Defendants' tobacco business failed at the end of October 2005; the business had been in financial straits since approximately the summer of 2004; upon learning of Tobacco Island's unfavorable financial condition, Plaintiff agreed to allow Defendants to pay on an extended basis; that upon receipt of NSF checks from Defendants, Plaintiffs did not terminate deliveries to Defendants but continued to make weekly deliveries; Plaintiffs did not take action to secure a lien on delivered goods; Plaintiff did not investigate the existence or value of any inventory remaining after Defendants' sale of goods at cost to another store and the closing of Tobacco Island;

and, up until the time of the closing of the store, Defendants made efforts to pay on checks given to Plaintiff but returned NSF, whether by making the $2000 per week payments on one NSF check or selling inventory at cost to pay off another NSF check. Also, based upon Defendant Misti Talbert's credible testimony, Defendants intended to have funds in the Tobacco Island bank account to cover post-dated checks given to Plaintiff for previously delivered inventory.

Plaintiff failed to submit sufficient credible evidence that Defendants received the goods by reason of false pretenses, false representations or actual fraud during the period of time at issue. Plaintiff failed to submit credible evidence to show that Defendants used the sales proceeds of goods obtained from Plaintiff in any manner other than to pay on prior invoices owed to Plaintiff and pay routine, reasonable overhead expenses. Thus, the debt Defendants owe Plaintiff is not excepted from discharge under 11 U.S.C. § 523(a)(2)(A).

In its complaint, Plaintiff did not request, and is not entitled, to attorney's fees in this action.

A judgment consistent with this Memorandum Opinion will be entered.

IT IS SO ORDERED.

###